*I. J. Bussell, Parker & Parker,* and *J. H. Quarterman,* contra.

---

## GRIER v. THE STATE.

1. The indictment was not demurrable. While two distinct offenses cannot lawfully be embodied in the same count, an indictment which merely elaborates the details of the particular charge of murder by alleging that the accused shot at one person with malice aforethought and with intent to kill and murder her, but in the shooting missed that person and killed and murdered another named person, is not demurrable for duplicity, or because assault with intent to murder is charged, or because the jury may imply that another charge is pending against him, or because it is doubtful whether the accused is to be tried for assault with intent to murder or for murder.

2. A wife is an incompetent witness against her husband upon his trial under a criminal prosecution, except for offenses committed or attempted to have been committed upon her person, and in case of abandonment of his child. Consequently it was error to permit a wife to testify at all upon the trial of her husband under an indictment in which he was charged with the murder of his child, even though it was alleged in the indictment that the killing of the child was the result of an attempt to kill the wife.

3. There is no merit in the fifth, sixth, and seventh grounds of the amendment to the motion for a new trial.

4. A ground of a motion for new trial complaining of the admission of documentary evidence cannot be considered unless the same is set forth either literally or in substance in the motion itself or is attached thereto as an exhibit.

5. In view of the ruling in the second headnote, the court erred in instructing the jury that any portion of the testimony of the wife was competent, although in connection therewith he limited the purpose for which such testimony should be used.

No. 3860.    MAY 15, 1924.

Indictment for murder. Before Judge Searcy. Monroe superior court. June 16, 1923.

The grand jurors of Monroe County returned an indictment against Cary Grier, charging him with the offense of murder, for that he, "unlawfully and with force and arms and a pistol, the same being a weapon likely to produce death, and acting with malice aforethought, did shoot at Georgia Grier with intent to kill and murder her, the said Georgia Grier, and, in the shooting of said pistol then and there, did miss the said Georgia Grier, and did then and there, with said pistol, and acting with malice aforethought and unlawfully and feloniously, kill and murder K. C. Grier by shooting the said K. C. Grier with said pistol, contrary to the laws of said State," etc. On formal arraignment, before pleading, the defendant demurred on the following grounds: (1) Because the indictment is duplicitous and void, in that it charges him in one count with two separate indictable offenses against two separate and distinct persons, that is, assault with intent to murder Georgia Grier, and the murder of K. C. Grier. (2) Because said assault with intent to murder as pleaded was made on a person other than the one alleged to have been murdered, and is in no sense a necessary allegation in preferring the charge of murder. (3) Because all allegations with reference to said assault are surplusage and prejudicial to the defendant. (4) Because said indictment is prejudicial to the defendant, in that he is entitled to be tried on each charge without the jury trying him knowing of the other charge against him. (5) Because he is entitled to specific information of the charge he is to be tried for, and said indictment leaves him in doubt as to whether he is to be tried for assault with intent to murder or for murder. (6) He specially demurs to that portion of the indictment which alleges an assault upon Georgia Grier, because: (a) It is mere surplusage and unnecessary in charging murder against defendant. (b) It merely prejudices his case, in that it acquaints the jury with the fact that there is another charge against him, and this denies him a fair and impartial trial. (c) It indirectly gets before the jury subject-matter, without evidence, which the court should not permit the State to prove under the rules of evidence. The court overruled the demurrer, and the defendant excepted.

The case proceeded to trial, and the jury returned a verdict find-

ing the defendant guilty, and recommended him to the mercy of the court. He filed a motion for a new trial upon the general grounds, and later amended his motion and assigned error upon the grounds:

(1) Because the court overruled the demurrer.

(2) Because the court allowed Georgia Grier, the wife of the defendant, to testify against him, he not being on trial for any offense committed upon her.

(3) Because the court allowed the wife to testify against him for any purpose, and the restricting of her testimony to the evidence of the assault upon her did not cure this error, but rather augmented it, in that it put before the jury the facts in a case other than the one in which the defendant was being tried.

(4) Because the court allowed the wife, over his objection, to testify against him as follows: "On December 18, 1921, I lived at Bolingbroke, in Monroe County. On that day my husband shot at me with an automatic pistol twice. This is the pistol. I had done nothing to cause him to shoot at me. He missed me when he shot. I was sitting in the corner by the dresser, when he said to stand out, that he was going to kill me. I said, 'Don't kill me;' then he pushed me and said to get back, he was going to shoot me. He pushed me back and shot twice. My baby, K. C. Grier, was in my arms. This was in Monroe County." The objection was that this evidence was irrelevant; that it tended to establish a crime other than the one for which the defendant was on trial; and that the witness was incompetent to testify against her husband unless he was on trial for an offense committed or attempted upon her person.

(5) Because the court allowed W. F. Cole, over objection, to testify as follows: "After I told him about the warrant, I got hold of him and said, 'Come in the store,' and he made an attempt to get loose. We carried him in the store and he ran out of his overcoat and went out of the store; my son and Mr. Edey brought him back. In tusseling we finally got him into the store. I had my hand in his collar. He made a spring and tried to get loose, saying '— it, turn me aloose,' and struck me in the face. In the scuffle it tore the shirt-collar loose and he struck me with his fist, and I stumbled back. He made a break and ran out of the store door. My son got after him, and he struck my son, and he went

off across the road. My son shot him, and they run him and caught him." The objection urged was that this testimony was not a part of the res gestæ or in any way connected with the offense for which he was being tried; and that it constituted a new and independent offense for which the defendant had not been indicted and for which he was not on trial. It is stated in this ground that the court admitted the evidence, saying that it would be admitted only for such weight as it might have in showing whether a flight was attempted or not by the defendant.

(6) Because the court allowed Wilson Cole to testify to the same facts as are embraced in the preceding ground, over the same objection, said testimony being admitted to show flight. To this ground the court appended the following note: "The ruling of the court, objected to in the 6th & 7th grounds, was the same as in the 5th ground, viz.: 'only for such weight as it might have in showing whether a flight was attempted or not by the defendant,' and not as stated therein 'to show flight.' See charge of the court in the record."

(7) This ground is based upon the same ruling as to the testimony offered by another witness to the same facts as above set forth, and the same note is appended by the court.

(8) Because the court admitted in evidence, over objection, the petition for divorce filed by Georgia Grier against Cary Grier. This was objected to on the grounds that it was irrelevant and immaterial; because it permitted statements of the wife, not under oath, to go to the jury; which the court had expressly ruled she was incompetent to testify to; because said petition was merely the pleading in a suit instituted 69 days after the alleged homicide; because it opened the door for the admission of every statement made by the defendant's wife or her counsel in said pleading, without their taking the stand and swearing to the same; because defendant was thereby denied the right of being confronted with these witnesses and the right of cross-examination; because the court thereby allowed the wife to testify against him, when he was not on trial for any offense committed or attempted against her; because the court thereby allowed the wife to testify against him as to matters not in any way connected with the res gestæ, thus prejudicing movant's rights before the jury. To this ground the court appended the following note: "The following occurred, as

shown by the reporter's transcript of the evidence and as I remember the occurrence, and grounds 8 and 9 of the amended motion for new trial are corrected and modified in accordance with the following recitals, and as thus modified are certified as true, viz: 'The State offered in evidence the suit for a divorce filed by Georgia Grier on Feb. 19, 1922, against her husband Cary Grier —objected to (by deft.) on the ground that it does not illustrate the issue in the case and is incompetent to impeach the statement of the defendant.' 'By the court: It is inadmissible so far as impeaching the statement of the defendant.' 'State's counsel urged that it was admissible for the purpose of attacking the testimony of Mattie Grier as to the relationship of the parties after the killing of the child.' 'By the court: It is admitted solely as to whether or not it may or may not affect the testimony of Mattie Grier and Oscar Grier as to the friendly relations existing between this woman and her husband after the 18th of December, 1921.' "

(9) Because the court allowed the introduction of the divorce petition of Georgia Grier against Cary Grier, over objection, admitting it for the purpose of impeaching Mattie Grier and Oscar Grier as to the friendly relations of the defendant and his wife after the death of their child, because: (a) The court in its charge failed to instruct the jury of the limited purpose for which the petition was admitted in evidence, but left the whole petition for their consideration. (b) The court admitted said divorce petition for the purpose of contradicting and impeaching the testimony of Oscar Grier, who testified as follows: "The relations of Georgia Grier to her husband [defendant] were cordial and kind for forty, possibly sixty, days after the alleged homicide before she turned against him." The objection urged is that even if the divorce petition had any probative value it only showed the state of Georgia Grier's mind towards her husband 69 days after the alleged offense, and did not show the same within the period of 40 or 60 days fixed by the witness. (c) The court admitted said petition to contradict Mattie Grier, because Mattie Grier made no statement as to the relations existing between the defendant and his wife after the alleged crime was committed. (d) The court erred for the reason that Georgia Grier had been impeached by Mattie Grier and Oscar Grier, and the petition was admitted to contradict them; and this was an effort to impeach these witnesses, not by sworn

testimony or in any other way known to law, but by a self-serving statement `filed in the civil court by Georgia Grier, prepared by her counsel. (e) Said testimony so allowed was hearsay. (f) Said errors were prejudicial to the defendant.—The trial judge qualified this ground by reference to the note attached to the eighth ground.

(10) Because the court charged the jury as follows: "I call your attention further to this woman Georgia Grier, as to whether she was, at the time of the alleged occurrence, the wife of the defendant Cary Grier. If you find that she was, I charge you that a wife is competent, but not compellable, only to testify for or against her husband when he is on trial for an offense committed or attempted to be committed against her, and consideration of her testimony in this case is limited to the determination of the issue made by the indictment, wherein it charges that the homicide of K. C. Grier was the result of the alleged unlawful intention to kill, and from an assault made by the defendant upon his wife (if you find any such assault was made.)" The objection urged to this excerpt of the charge is that it incorrectly states the law applicable to the case on trial, because the defendant was not on trial for any offense committed or attempted on his wife, and the wife was in no sense a competent witness to testify against him in said case; and that said charge was prejudicial to defendant.

The judge overruled the motion for a new trial, and the defendant excepted.

*Willingham & Willingham,* for plaintiff in error.

*George M. Napier, attorney-general, T. J. Brown, solicitor-general, E. M. Owen, solicitor-general, T. R. Gress, assistant attorney-general,* and *Persons & Persons,* contra.

RUSSELL, C. J. (After stating the foregoing facts.)

1. There have been numerous decisions of this court construing § 954 of the Penal Code (1910), which provides that all indictments shall be deemed sufficiently technical if in the language of the code and where the offense is so plainly charged that the jury may easily understand the nature of the offense charged, to the effect that each defendant is entitled to be sufficiently informed of the nature of the charge against him as to be enabled to prepare his defense (e. g. *Johnson* v. *State,* 90 *Ga.* 441, 16 S. E. 92); and inasmuch as the indictment now before us merely sets forth more

fully than ordinarily the manner in which the alleged homicide was committed, we do not think the plaintiff in error has any cause for complaint. It is a principle so unquestioned as not to require the citation of authority that if one assault another with malice aforethought, intending to kill him, and a third person meets his death by the stroke or blow or shot intended for him who was the primary object of the assault, the offense is murder, although the assailant did not intend to kill him who actually lost his life. The indictment in this case does no more than set forth a case of this kind.

2. Passing from the general grounds of the motion for a new trial for reasons which are apparent from the opinion, we come to consider the amendment to the motion. In the first ground error is assigned upon the overruling of the demurrer which has already been considered upon the assignment of error upon the exceptions pendente lite. But for these exceptions the overruling of the demurrer could not be considered here. Rulings upon pleadings do not afford a proper ground for a motion for a new trial, Judge Bleckley having facetiously remarked that this principle is so hoary with age that he bowed to it reverently.

The second, third, and fourth grounds of the amended motion each presents in a different form the question whether Georgia Grier was competent to testify for or against the defendant, her husband, he not being on trial for an offense committed or attempted to have been committed on her person. The court permitted Georgia Grier, over the objection of the defendant, to testify that her husband shot at her with an automatic pistol twice. "This is the pistol. I had done nothing to cause him to shoot at me. He missed me when he shot. I was sitting in the corner by the dresser, when he said to stand out, that he was going to kill me. I said, 'Don't kill me;' then he pushed me and said to get back, he was going to shoot me. He didn't say why he was going to shoot me. He pushed me back and shot twice. My baby, K. C. Grier, was in my arms. This was in Monroe County." In the ruling upon the demurrer the court had necessarily adjudged that the defendant was on trial for the murder of K. C. Grier, and for that reason we think that Georgia Grier, the wife of the defendant, was wholly incompetent to testify in the case to any fact or circumstance either for or against her husband. As we under-

stand the provision of the code upon this subject, a wife is not permitted to testify even in a qualified or restricted sense to a part of what she may know, and remain silent as to the remainder of the truth which may rest in her knowledge. If her husband is on trial, a wife cannot testify at all. She cannot testify for her spouse, nor can she testify against him. "Husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other, except that the wife shall be competent, but not compellable, to testify against her husband upon his trial for any criminal offense committed, or attempted to have been committed, *upon her person.*" P. C. 1910, § 1037 (4). Different States in the Union have various rules as to the competency of husband and wife to testify for or against each other, but it will be observed that under the code section quoted a husband is never competent as a witness against his wife upon her trial for crime. *Eclor* v. *State,* 10 *Ga. App.* 777 (74 S. E. 295). A wife is competent to testify against her husband only upon his trial for "any criminal offense committed or attempted to have been committed upon her person," as well as "a competent witness to testify for or against her husband in case of abandonment of his child." The wife cannot testify *for* her husband upon his trial for any criminal charge, except that of abandonment. She cannot testify against him, unless the offense was committed upon her own person. The history of Penal Code section 1037 (4) shows the gradual evolution of the law in this State to its present status. An act of the General Assembly approved June 19, 1860 (Code of 1863, § 3782), declared that "Husband and wife, lawfully married, cannot be witnesses for or against each other, nor can the wife be a witness for a third person, where her testimony may indirectly affect her husband. The objection exists after the dissolution of the marriage, by death or otherwise, as to all knowledge acquired by either party by reason of the marriage relation. An exception to this general rule exists in all criminal or quasi-criminal proceedings against either party for offenses upon the person of the other." It will be seen that the exception to the general rule that neither husband nor wife could be witnesses for or against the other permitted both husband and wife to testify against the other in criminal proceedings for offenses upon the person of the other. By the act approved December 15, 1866, known as

"the evidence act" of that year (Acts 1866, p. 138), the privilege accorded the husband of testifying against his wife for an offense committed upon his person was stricken out, and in § 3798 of the Code of 1867 and in the fourth subdivision of § 3854 of the Code of 1873 it was declared that "No husband shall be competent or compellable to give evidence for or against his wife in any criminal proceeding, nor shall any wife, in any criminal proceeding, be competent or compellable to give evidence for or against her husband." Thus stood the law until 1880, when the legislature passed an act (Acts 1880, p. 121) providing that the wife should be competent but not compellable to testify against her husband upon his trial for "any criminal offense committed or attempted to have been committed upon her person," and in the Code of 1882 this exception in behalf of the wife is inserted as the concluding portion of the fourth subdivision of § 3854.

From the history of the legislation upon this particular subject it would seem to be the well-established policy of this State that the wife shall not be permitted to testify against the husband in any trial in which the crime charged was not one committed upon her person. Consequently, while the wife in the present case would be a competent witness to testify to the offense of assault with intent to murder committed upon her person, if such be the truth of the case, she is not competent to testify to the offense of murder committed upon another, even though in the commission of that offense another and a different offense was committed upon her person. It must be remembered that the wife is not permitted to testify at all except as a matter of exception to the general rule; and the provision for her testifying, being an exception, cannot be liberally extended and must be strictly construed. In Bassett v. United States, 137 U. S. 496 (11 Sup. Ct. 165, 34 L. ed. 762), the Supreme Court had before it the question whether a wife was a competent witness against her husband on trial under an indictment charging polygamy. Naturally, as stated by the court, the polygamous relation of the husband is most obnoxious to a wife and humiliating and injurious to her peace and happiness; but the judgment of the Supreme Court of Utah was reversed because the wife was held not competent, because, under a statute similar to our own, the crime was not one committed against the person of the wife. In delivering the opinion of the court, Mr. Justice

Brewer said: "It was a well-known rule of the common law that neither husband nor wife was a competent witness in a criminal action against the other, except in cases of personal violence, the one upon the other, in which the necessities of justice compelled a relaxation of the rule. . . This precise question has never been before this court, but the common-law rule has been noticed and commended, in Stein *v.* Bowman, 13 Pet. 209, 222, in which Mr. Justice McLean used this language: 'It is, however, admitted in all the cases that the wife is not competent, except in cases of violence upon her person, directly to criminate her husband, or to disclose that which she has learned from him in their confidential intercourse.' 'This rule is founded upon the deepest and soundest principles of our nature, principles which have grown out of those domestic relations that constitute the basis of civil society, and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down and impair the great principles which protect the sanctities of husband and wife, would be to destroy the best solace of human existence.' We do not doubt the power of the legislature to change this ancient and well-supported rule; but an intention to make such a change should not lightly be imputed. It cannot be assumed that it is indifferent to sacred things, or that it means to lower the holy relations of husband and wife to the material plane of simple contract. So, before any departure from the rule affirmed through the ages of the common law,—a rule having its solid foundation in the best interests of society,—can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit. . . We conclude, therefore, that the section quoted from the Code of Civil Procedure, if applicable to a criminal case, should not be adjudged as working a departure from the old and established rule, unless its language imperatively demands such construction. Does it?"

Does the language of our statute demand a construction that the injury to the feelings of a mother in the murder of her child will authorize a stretch of the provisions of § 1037 (4) of the Penal Code, permitting the wife to testify as to crimes committed upon her person, so as to include the killing of her child, a baby in her arms? We think not. In the Bassett case, supra, Mr.

Justice Brewer asks the question, "Is polygamy such a crime against the wife? That it is no wrong upon her person is conceded; and the common-law exception to the silence upon the lips of the husband and wife was only broken, as we have noticed, in cases of assault of one upon the other. That it is humiliation and outrage to her is evident. If that is the test, what limit is imposed? Is the wife not humiliated, is not her respect and love for her husband outraged and betrayed, when he forgets his integrity as a man and violates any human or divine enactment? Is she less sensitive, is she less humiliated, when he commits murder, or robbery, or forgery, than when he commits polygamy or adultery? A true wife feels keenly any wrong of her husband, and her loyalty and reverence are wounded and humiliated by such conduct. But the question presented by this statute is not how much she feels or suffers, but whether the crime is one against her." In the case at bar, to ask the question whether the killing of her child is a crime upon the person of the wife is to answer it in the negative.

The precise point here involved does not appear to have been heretofore presented to this court, but such general principles as those adverted to in the opinion of Mr. Justice McLean, supra, and that exceptions to general rules must be confined within their express limits, have always been recognized here; and therefore we are convinced that the decision of the Supreme Court of West Virginia upon a case almost identical as to its facts with that now before us correctly states the rule. In State v. Woodrow, 58 W. Va. 527 (52 S. E. 545, 2 L. R. A. (N. S.) 862, 112 Am. St. R. 1001, 6 Ann. Cas. 180), the court held: "A wife is not a competent witness against her husband in a prosecution against him for the murder of his infant child of the age of fourteen months, though the same pistol ball killed the child and wounded the wife while the child was in her arms." In the opinion delivered by Brannon, P., many authorities are cited showing that the bulk of American decisions is to the effect that to place the wife within the exception which will permit her to testify against her husband the case must be one of personal violence to the spouse. "The act must touch her person, or her personal individual right, as a person distinct and individualized from the balance of the community, to come under the exception spoken of. An enormous

wrong this murder was to the mother in a moral point of view, in an emotional point of view, in a sentimental point of view, in a pathetic point of view, under emotions of the heart which move human beings, owing to the relation of mother and child. We are apt to consider this terrible crime as a greater one against the mother than to any other living human being. Still, in a physical point of view, the homicide did not touch the person of the wife, but was only a crime against her as one member of the community, —I mean in the eye of the law. Remember that Woodrow was tried for killing the child, not for shooting his wife. On a trial for shooting his wife she could, under the exception stated, give evidence against her husband, and could prove, if material, not only the shooting of herself, but also the shooting of the child, as a part of the res gestæ; but on his trial for killing the child the fact that the one ball did violence to both mother and child does not alter the case. The homicide of the child is one distinct crime; the shooting of the mother another distinct crime. The close connection of the two in time and circumstances does not blend the results of the ball, and make the killing of the child a personal or corporeal violence to the mother. To come under the exception, the crime must be against the mother in a legal point of view. The rule of evidence as to res gestæ will not admit the wife as a witness. Under that rule, the question is, not the competency of the witness proving the things done or said, but whether the things themselves are proper to go before the jury, even though proved by a competent witness; whereas here it is a question whether the witness is a proper one to prove the things done or said, admitting those things to be proper evidence, if deposed to by a competent witness. Necessity, the want of another witness, is pleaded for the admission of the wife's evidence in this case." "If a husband should kill a man in the field or highway, none but the wife of the murderer being present, would she be a competent witness against her husband? Surely not. Yet the cry of justice would be as loud in that case as in the present case. The necessity would be just as great."

We think the error in the admission of this testimony requires the grant of a new trial.

3. As qualified by the note of the presiding judge there is no merit in the assignment of error in the fifth, sixth, and seventh

grounds of the amendment to the motion for a new trial, which complain of the admission of testimony as to the flight or attempted flight of the defendant.

4. The defendant objected to the admission in evidence of the petition for divorce by his wife against him, on the ground that "it does not illustrate the issues in this case, and is incompetent to impeach the statements of the defendant." The petition for divorce is not set out in extenso, nor is the substance thereof stated in the ground of the motion which complains of its admission. A ground of a motion for a new trial complaining of the admission of documentary evidence cannot be considered unless the same is set forth either literally or in substance in the motion itself or is attached thereto as an exhibit. *Norred* v. *State,* 127 *Ga.* 347 (56 S. E. 464); *Walton* v. *Busby,* 147 *Ga.* 487 (94 S. E. 562).

5. Since we hold that the wife is not competent to testify against her husband where the essence of the crime with which he stands charged is an injury to the person of some one other than the wife, the court erred in charging as complained in the tenth ground of the amended motion. In this instruction, as it will be found in the statement of facts, the court in effect instructed the jury that the testimony elicited from Georgia Grier, the wife, was competent, merely calling their attention to the fact that the consideration of her testimony was "limited to the determination of the issue made by the indictment, wherein it charges that the homicide of K. C. Grier was the result of the alleged unlawful intention to kill and from an assault made by the defendant upon his wife (if you find that any such assault was made)." We fail to understand the limitation imposed by the court, and doubt if the jury clearly understood it. How the assault made by the defendant upon his wife was to indicate an unlawful intention to kill K. C. Grier; but however that may be, the defendant was not on trial for any offense committed or attempted to have been committed upon her person, and the wife was in no sense a competent witness to testify against him; and therefore the instruction incorrectly stated the law applicable to the case.

*Judgment reversed. All the Justices concur, except*

HINES, J., dissenting. I dissent from the ruling of the court set out in the second headnote and corresponding division of the opinion. The serious and controlling question in this case is

whether the wife of the defendant was competent to testify against him on his trial under this indictment, as to the felonious and malicious assault which resulted in the death of their child. The court confined the testimony of the wife strictly to the facts of this assault, and did not permit her to testify that such assault resulted in the homicide of the child. The Penal Code declares: "Husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other, except that the wife shall be competent, but not compellable, to testify against her husband upon his trial for any criminal offense committed, or attempted to have been committed, upon her person. She is also a competent witness to testify for or against her husband in cases of abandonment of his child, as provided for in section 116 of this Code." Penal Code (1910), § 1037(4). The Penal Code likewise declares that the wife is a competent witness against her husband when he is charged with whipping, beating, or otherwise cruelly maltreating her. Penal Code (1910), § 104.

Under the section of the Penal Code above cited, the wife is competent "to testify against her husband upon his trial for any criminal offense committed, or attempted to have been committed, upon her person." If the husband attempts to commit a felonious and malicious assault upon his wife by shooting at her and misses his mark and kills their infant child, can the wife testify against him, as to the assault upon her, on his trial for the homicide of their child? It is insisted that she is incompetent, because the husband is on trial for the homicide of the child, and not for the felonious and malicious assault upon his wife. In support of this proposition counsel for the defendant rely upon the case of State v. Woodrow, 58 W. Va. 527 (supra). The majority opinion in that case holds that the wife, under the identical state of facts involved in the instant case, was incompetent to testify against the husband. This ruling was put upon the ground that the prisoner's act of shooting the child was not a crime against the wife, that it was not violence against her person, and that it has to be such to bring the wife within the exception to the rule which renders her incompetent to testify against her husband. This ruling would be well founded if the husband kills his child independently of any assault upon his wife. The flaw in the argument to support the ruling in the Woodrow case is, that it assumes that the act of

shooting at the wife feloniously and maliciously and of missing his mark and killing his child did not involve a crime both against the wife and the child. The essence of the crime against the child consisted of the felonious and malicious attempt upon the life of the mother. There was no crime against the child if there was no crime against the mother. I think the better rule is stated in Clarke v. State, 117 Ala. 1 (23 So. 671, 67 Am. St. R. 157). In that case the Supreme Court of Alabama said: "In a prosecution for murdering an infant child, alleged to have been caused by defendant beating his wife before its birth, the wife is a competent witness for the defense." Clearly, if she is a competent witness for the defense, she is a competent witness for the State. In the case last cited the Supreme Court of Alabama said: "In relation to the competency of husband and wife as witnesses for or against each other in criminal cases or proceedings, we have no statute which changes or modifies the common law. By the common law, in all cases of personal injuries committed by husband or wife against each other the injured party is an admissible witness against the other. 1 Greenl. Ev. § 343; 1 Bish. New Cr. Proc. §§ 1151-1155; Whart. Cr. Ev. § 393 et seq. This exception to the general rule excluding husband and wife as witnesses for or against each other, it may be, originally grew out of a supposed necessity of the protection of the wife against personal violence, threatened or actual, by the husband. Whatever may have been the origin of the exception, it is now recognized as extending to all cases in which the element of personal violence to the wife is a necessary constituent of the offense. . . Wherever the element of personal violence is a necessary constituent of the offense, every reason exists upon which the exception rested originally, and for the sake of public justice the wife should be admitted as a witness. And in all cases in which she is admissible against, she is admissible for, the husband." The dissenting opinion in the Woodrow case, supra, rests upon the same line of reasoning. The wife by the common law was made a competent witness against the husband in offenses committed, or attempted to be committed, upon her person, *ex necessitate rei*. Our statute embraced in Penal Code (1910), § 1037 (4), is but an affirmation of the common-law principle. I see no valid reason why the wife, under the facts of this case, should not from necessity be a competent witness to testify against

the husband. The homicide was committed in the privacy of the home of defendant. There was no eye-witness to the tragedy except the wife. She was sitting in the corner of their bedroom by a dresser, when, without excuse, mitigation or justification, the husband told her to stand out, that he was going to kill her. She appealed to him not to kill her. He pushed her back, repeating that he was going to kill her, and shot twice at her with an automatic pistol. He missed his wife but killed their baby in the arms of the mother. I see no reason why, under the common-law rule and our statute which adopts that rule, and under the facts of this case, the wife was not a competent witness against the husband, under the exception to the general rule which disqualifies her to testify against her husband when charged with crime.