339 So.2d 1366 (1976)
Larry A. MERRITT
v.
STATE of Mississippi.
No. 49247.
Supreme Court of Mississippi.
November 2, 1976.
Rehearing Denied November 30, 1976.
Dale & Upton, Sebe Dale, Jr., Columbia, for appellant.
A.F. Summer, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
*1367 GILLESPIE, Chief Justice, for the Court:
Larry Alan Merritt was convicted in the Circuit Court of Marion County for the murder of his two-year old daughter, Shannon. He was sentenced to life imprisonment.
The facts are stated in the light most favorable to the State because the jury returned a verdict of guilty. Shannon Merritt, age two, daughter of the defendant and his wife Toddie Lynn Merritt, died on February 8, 1975. In November, 1974, again in December of the same year, and again about the middle of January, 1975, the defendant discussed matters concerning the death of his daughter Shannon, including comments as to who pallbearers would be in the event of her death, what his wife's mother would do if Shannon died, and how many of a certain kind of pill it would take to kill her. On December 14, 1974, defendant took out insurance policies on the lives of his two daughters: $25,000 on the life of Shannon, and $15,000 on the life of Shelia, his one-year old daughter. Defendant borrowed the money from a bank to pay the premiums. Defendant and his wife, Toddie Lynn, were the beneficiaries. These policies became effective on December 14, 1974, and were delivered and explained to the Merritts in the latter part of January, 1975.
On the night of February 7, defendant got out of his bed on two occasions, and told his wife he wanted "to sleep with the babies." He had never slept with the babies before. The next morning about five o'clock, Toddie Lynn heard the defendant call out twice, "Oh, my God," and saw her husband holding the body of Shannon in his lap. He was in the process of removing from Shannon's neck a pull cord which had been disconnected from a toy frog. Defendant explained to his wife that he had gone to his car to leave but had returned to kiss the babies good-bye. He also told his wife that he found Shannon lying face down with her face in her pillow. However, the autopsy subsequently performed revealed that the blood, due to gravitational pull, had settled in the back part of Shannon's body and in the opinion of the physician performing the autopsy, the child was lying on her back at the time of her death. Expert opinion indicated that death was due to asphyxia. However, due to the fact that the cord around Shannon's neck did not do sufficient damage to the tissues to indicate strangulation, a pathologist was of the opinion that the asphyxia was the result of suffocation.
On the morning of Shannon's death, the defendant made two telephone calls between 7:30 and 7:45, concerning the insurance on Shannon's life. About 7:40 o'clock on the morning of Shannon's death, defendant informed the agent who had written the insurance policies that Shannon had died and defendant wanted to know how he could get his insurance money. He called the agent again on the evening of February 8, and on Monday, February 10, he brought the policy to the insurance agent's office. The defendant did not take the stand at the trial.
The question for our decision is whether defendant's wife was a competent witness to testify before the grand jury and at the trial.
Mississippi Code Annotated section 13-1-5 (1972) states:
Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. A criminal prosecution of either husband or wife for contributing to the neglect or delinquency of a child or desertion or nonsupport of children under the age of sixteen (16) years or abandonment of children shall be deemed controversies between husband and wife for the purpose of this section. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both. (Emphasis added)
*1368 That part of the statute in italics was added by Chapter 236, Laws of 1954, and became effective on June 20, 1954.
The original statute was a partial codification of the common law rule that one spouse was incompetent to testify in any case for or against the other. The reasons for the common law rule and its codified form are two-fold: (1) At common law, the husband and wife were considered as but one person and because of this unity and identity of husband and wife, when one was excluded on the ground of interest, the other was also excluded (at that time a party in interest was not a competent witness in his own behalf); (2) the courts were reluctant to sanction any rule tending to promote domestic dissension and endeavored to preserve inviolate the mutual confidence which is essential to the marriage relation, the peace of society, and the social welfare. McRae v. State, 104 Miss. 861, 61 So. 977 (1913); 81 Am.Jur.2d, Witnesses § 111 (1976). The common law rule is of great antiquity.
The legislature by several amendments has recognized that at least part of the reasons that brought the rule into being no longer exist. The common law rule that disqualified interested persons as witnesses was removed in this jurisdiction by Chapter 61, Article 190, Code of 1857 [Miss. Code Ann. § 13-1-3 (1972)]. Thus the first of the above-stated reasons for the common law rule concerning spouses does not now exist. The policy considerations stated above as the second of the two-fold reasons for the rule that a spouse was not a competent witness against the other exists now only in part. For instance, the law does not now regard husband and wife as one person in the sense it once did. Disability of coverture was abolished in 1880. [Miss. Code Ann. § 93-3-1 (1972)]. Husband and wife have been able to sue each other since 1880. [Miss. Code Ann. § 93-3-3 (1972)]. Dower and curtesy were abolished the same year. [Miss. Code Ann. § 93-3-5 (1972)].
The earliest statute on the subject was the Code of 1857, Chapter 61, Article 193, the entire text of which was: "In criminal cases, husband and wife shall be competent witnesses for each other." It has been amended several times in order to broaden the category of actions in which a spouse is a competent witness.
Prior to the 1954 amendment, the Court decided McRae, where the defendant was convicted of vagrancy and the question arose as to whether the wife of the defendant was a competent witness against her husband. At that time husbands and wives were "competent witnesses in their own behalf, as against each other, in all controversies between them." The question was whether in a prosecution for vagrancy the proceeding was a controversy between the husband and wife. The Court stated that the vagrancy statute was a police regulation for the purpose of requiring the husband and father or the head of the family to provide, within his ability, for the support of his wife or family, so that they would not become a public charge. The Court held, in effect, that in a prosecution for vagrancy a controversy between the husband and wife existed and the Court concluded by saying, "We believe that this is such a controversy as to render competent the testimony of the wife in this case." 104 Miss. at 870, 61 So. at 979. Thereafter the statute was amended, as already stated, in 1954, and there has been two significant cases since that amendment, the first being Fairley v. State, 225 Miss. 371, 83 So.2d 278 (1955). In Fairley, the question was whether the wife was a competent witness against her husband in a prosecution wherein the husband was charged with the rape of his child. The mother did not testify but the court allowed the physician who examined the child to testify that the child's mother reported the rape to him. The Court held that the physician could not testify because the wife, had she been introduced, would not have been a competent witness. That case is of no assistance in determining whether the 1954 amendment should or should not have been applied for the reason that the State conceded that the mother would not have been permitted to testify. An examination of this case and *1369 the original record reveals that the 1954 amendment, although it was in effect several months prior to that crime, was not brought to the attention of the Court or considered by it in rendering the decision.
The other case following the 1954 amendment was Graham v. State, 250 Miss. 816, 168 So.2d 496 (1964). In Graham, the Court stated, "We hold the wife is a competent witness against her husband when he is charged with incest with his and his wife's minor daughter," and then stated as follows:
The purpose of the 1954 amendment was to further extend the area wherein husband and wife could testify against each other in order to effectively enforce the criminal laws enacted for the purpose of protecting the marital status. Under the 1954 amendment to section 1689, husband and wife are competent to testify against each other in prosecutions for contributing to the neglect or delinquency of a child. The crime of incest involves contributing to the delinquency of a child. We are of the opinion that under the 1954 amendment husband and wife are competent witnesses against each other in all prosecutions within the general classes of crimes therein described. It cannot be successfully argued that incest with appellant's minor daughter was not a crime contributing to the delinquency of said child. 250 Miss. at 819, 168 So.2d at 497.
It is well settled that a wife is competent to testify against her husband for a crime of personal violence committed by him against her. This common law exception is based on the necessity for such testimony. The exception has also been based on the recognition that once violence has been committed by one spouse against the other, the sanctity of the marriage has been destroyed. Thus, the very reason for the privilege has been ravaged. Wigmore explains:
[I]f the promotion of marital peace, and the apprehension of marital dissension, are the ultimate ground of the privilege, it is an overgenerous assumption that the wife who has been beaten, poisoned or deserted is still on such terms of delicate good feeling with her spouse that her testimony must not be enforced lest the iridescent halo of peace be dispelled by the breath of disparaging testimony. And if there were, conceivably, any such peace, would it be a peace such as the law could desire to protect? Could it be any other peace than that which the tyrant secures for himself by oppression? And could the law pretend to regard the effect produced by a wife's testimony in her own redress as being worth consideration on behalf of a husband who has already grossly violated his marital duties? If there had been any reason at all for the privilege, that reason surely fell away in such cases. 8 Wigmore, Evidence § 2239 at 243 (McNaughton Rev. 1961).
This Court recognized this common law exception long ago. See Turner v. State, 60 Miss. 351 (1882). The modern trend has been to expand this common law exception to include violent acts committed on the children. When a father murders his child, how can it possibly be said that the prohibition of the wife's testimony will promote domestic harmony or the peace of society? Indeed, the family has been destroyed and society in general would suffer if the wife's testimony was withheld from the court. In State v. Kollenborn, 304 S.W.2d 855 (Mo. 1957), a similar issue was raised before the Missouri Supreme Court. The defendant had been convicted of a crime of personal violence against his child, and the wife was permitted to testify. Missouri's competency statute provides only the general rule that one spouse is incompetent to testify against another. The Court stated that the statute should not be read so as to eliminate the common law exception permitting the wife to testify against her husband in cases of violence committed by the husband upon her. The Court went on to expand the common law exception in cases where the husband has been charged with crimes of personal violence against his child. The Missouri Court stated:
The offense presently charged was a crime against the person of an infant less *1370 than 5 months of age; there is at least a fair inference that no one was present except the defendant, the wife, and the child. We now hold that the wife, testifying voluntarily, is a competent witness against her husband in a prosecution for acts constituting a crime of personal violence against her child. The exact scope of the common law exception has been somewhat nebulous and confused; we need not attempt at this time to define further its precise limits and boundaries. The present offense can well be classed as one against the marital status, within the authorities using that test as a guide. We hold that every reason of public policy and true necessity which permits the wife to so testify in the event of a personal injury to herself, applies equally here. The modern tendency is to relax the old rules of incompetency of witnesses, generally. Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369. This tendency is exemplified in many of the modern statutes. It is, in our opinion, contrary to all principles of morality and justice to close the mouth of the only witness in such a case as the present. What is not good sense should not be the law. 304 S.W.2d at 864.
We agree with the Missouri Court and hold that the wife is a competent witness in the prosecution of her husband for crimes involving personal violence against their child. Our Legislature has also recognized that no reason for the privilege exists when there is a controversy between husband and wife. A crime of personal violence against the child is a crime that destroys the conjugal relation and in essence is a controversy between husband and wife within the meaning of our statute.
Other jurisdictions, although using different paths, have reached similar results.
In State v. Taylor, 515 P.2d 695 (Mont. 1973), the defendant was convicted of the murder of his child and the conviction rested largely upon the testimony of his wife. A Montana statute provides that where one spouse is a party to a criminal action, the other, absent consent, is not a competent witness. However, this statute, which is similar to ours, provides for exceptions. Cases involving "abandonment or neglect" of children are among those exceptions. In holding that the murder of a child constituted neglect within the meaning of the statute, the Court said:
[T]he purpose of ... [the statute] is the protection of the sanctity of marriage and the home. We feel that the purpose of the exceptions to this statute is also protective. In the case of the exception related to the neglect of children, the purpose is protection of children from abuse which could otherwise be practiced without fear or retribution under protection of the marital privilege. If defendant's construction of this protective exception is adopted, the protection would extend to injuries negligently inflicted but not willful assault, to a negligent homicide but not to premeditated murder. Such a construction is clearly too narrow, outraging both reason and justice... . For the purposes of this exception, we hold that the term "neglect" includes any abuse of children whether inflicted negligently or intentionally. In adopting this construction we are satisfied that we reach a result which is required by both reason and justice and which is within the contemplation of the legislature at the time it enacted section 94-8802, R.C.M. 1947. 515 P.2d at 703.
In Chamberlain v. State, 348 P.2d 280 (Wyo. 1960), the Wyoming Supreme Court held that the statutory rape by the father of his daughter was a crime against his wife within the meaning of its statute providing that a wife is a competent witness in "... criminal proceedings for a crime committed by one against the other..." 348 P.2d at 282.
The approach to the problem has differed due to the variety in language of individual state statutes. The result has been the same based on the recognition that once a child has been subjected to personal violence from the hands of the father, no good reason remains for prohibiting the mother *1371 from testifying. The Court, in Chamberlain, quoted the following from the concurring opinion of Mr. Justice Stewart in Hawkins v. United States, 358 U.S. 74, 81, 82, 79 S.Ct. 136, 140, 3 L.Ed.2d 125 (1958):
Any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice. When such a rule is the product of conceptualism long ago discarded, is universally criticized by scholars, and has been qualified or abandoned in many jurisdictions, it should receive the most careful scrutiny. Surely `reason and experience' require that we do more than indulge in mere assumptions, perhaps naive assumptions, as to the importance of this ancient rule to the interests of domestic tranquillity. 348 P.2d at 285.
We have carefully considered the other assignments of error and find them without merit. Accordingly, the case is affirmed.
AFFIRMED.
ROBERTSON, SUGG and WALKER, JJ., concur.
PATTERSON and INZER, P. JJ., and LEE and SMITH, JJ., dissent.
BROOM, J., took no part.
LEE, Justice (dissenting):
Appellant was convicted of an atrocious crime, the murder of his two-year-old child for insurance money. The wife's testimony is crucial. With it the evidence sustains the conviction, without it the jury may have found appellant not guilty. I do not think appellant's wife was competent to testify against him, nor do I think the end (conviction) regardless of the crime, justifies the means (conviction by incompetent testimony).
At common law, the husband and wife were not competent witnesses for or against each other, with the exception that a wife was a competent witness against her husband in a prosecution for an assault and battery committed by him on her person. The common law was partially codified by the statutes of this state and exceptions were incorporated therein prior to 1954, which provided that a husband and wife may be introduced by each other as witnesses in all cases, civil or criminal, and were competent witnesses in their own behalves as against each other in all controversies between them. In all other instances, where either of them was a party litigant, the other was not competent as a witness.
The present Section 13-1-5, Mississippi Code Annotated (1972), reads as follows:
"Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. A criminal prosecution of either husband or wife for contributing to the neglect or delinquency of a child or desertion or nonsupport of children under the age of sixteen (16) years or abandonment of children shall be deemed controversies between husband and wife for the purpose of this section. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both." (Emphasis added)
That part underlined was added by Chapter 236, Laws of 1954, and was enacted at the first session of the Legislature after adoption of Chapter 387, Laws of 1952, which chapter provided that under the Aid-to-Dependent Children Program, when a child under the age of sixteen (16) years to whom an aid-to-dependent children grant was furnished had been deserted or abandoned by the parent (father), the Department of Public Welfare was required to certify such fact to prosecuting attorneys in the respective counties. The apparent purpose of the 1954 amendment was to enable the mother of the child  the wife of the deserting or neglecting father  who, in most cases, was the only witness in same, to testify against her husband. Since the rule in the case of State v. Taylor, 515 P.2d 695 (Mont. 1973), which enlarged the word "neglect" *1372 to the word "murder," was cited but not relied upon in the majority opinion, it is not necessary to discuss the 1954 exception further.
The majority opinion, in following the case of State v. Kollenborn, 304 S.W.2d 855 (Mo. 1957), said:
"We agree with the Missouri Court and hold that the wife is a competent witness in the prosecution of her husband for crimes involving personal violence against their child. Our Legislature has also recognized that no reason for the privilege exists when there is a controversy between husband and wife. A crime of personal violence against the child is a crime that destroys the conjugal relation and in essence is a controversy between husband and wife within the meaning of our statute."
The Missouri statute relating to testimony between husband and wife, § 546.260, RSMo 1949 V.A.M.S. (cited in Kollenborn) is as follows:
"No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, ... ." 304 S.W.2d at 861.
In Kollenborn, the Court stated:
"It will be noted that this statute makes no attempt to incorporate or define the common law exception permitting a spouse to testify in case of an assault or violence to him or her by the other spouse. In this respect the Missouri statute is exceptional... .
* * * * * *
Having determined that the common law exception permitting the testimony of the wife in certain cases still exists in Missouri, we may now determine its present scope, in so far as this case is concerned. .. . We now hold that the wife, testifying voluntarily, is a competent witness against her husband in a prosecution for acts constituting a crime of personal violence against her child... ." 304 S.W.2d at 861, 863-864.
The Mississippi statute [Mississippi Code Annotated § 13-1-5 (1972)] is different in material aspects from the Missouri statute.
(1) Husbands and wives may be introduced by each other in all cases, civil or criminal (in derogation of the common law).
(2) They shall be competent witnesses in their own behalf, as against each other, in all controversies between them (included is the common law exception that a wife is a competent witness against her husband in a prosecution for assault and battery by him on her person).
(3) In all other instances (other than on a charge of contributing to the neglect or delinquency or desertion or nonsupport of children under the age of sixteen years  1954 exception) where either is a party litigant the other shall not be competent as a witness (this enacts the common law into statutory law).
The majority decision, in following Kollenborn, amends Part 3, supra, of Section 13-1-5, Mississippi Code Annotated (1972), and, insofar as it pertains to any offense against a child of the parties, overrules all cases on the point from the beginning of Mississippi jurisprudence. It is interesting to note that those changes in the common law through the years insofar as the relationship between husband and wife is concerned, as pointed out by the majority, have been accomplished by legislative enactment and not by judicial construction.
In Ulmer v. State, 157 Miss. 807, 128 So. 749 (1930), appellant was charged with and convicted of deserting and neglecting his minor child under the age of sixteen years [Chapter 86, General Laws of 1928, Extraordinary Session] prior to the adoption of Chapter 236, General Laws of 1954 [Exception in Mississippi Code Annotated § 13-1-5 *1373 (1972)]. His wife testified, and in reversing the case for that error, this Court said:
"We have repeatedly held that the wife is incompetent to testify against her husband in a criminal case, otherwise than as permitted to do so at the common law, and her testimony under the common law was limited to personal injuries such as assaults upon her, committed during the marriage relation. Under our decisions, therefore, the wife was an incompetent witness against the husband on a criminal charge. McQueen v. State, 139 Miss. 457, 104 So. 168; Doss v. State, 156 Miss. 522, 126 So. 197, and State v. McMullins, 156 Miss. 663, 126 So. 662." 157 Miss. at 809, 128 So. at 750.
In Fairley v. State, 225 Miss. 371, 83 So.2d 278 (1955), which was a prosecution of the husband for the rape of his fourteen-year-old daughter, a statement of the wife to the doctor who examined the child was admitted in evidence over objection. This Court, in holding that reversible error was committed by the trial court, said:
"The appellant first assigns as error and argues that the court erred in admitting over objection the testimony of Dr. Smith as to what the mother had told him. We are of the opinion that this assignment is well taken. Under Section 1689 of the Mississippi Code of 1942, a wife is an incompetent witness against her husband. If she could not testify over the objection of her husband as to the report of the rape made to her by the prosecutrix, then it was error to permit the doctor to do so, as this would be proving indirectly what could not be proved directly." 225 Miss. at 374, 83 So.2d at 279.
The Fairley case was decided without benefit of the 1954 amendment, but, since the majority opinion is not based on the amendment, Fairley correctly states the law.
In Wallace v. State, 254 Miss. 944, 183 So.2d 525 (1966), on a prosecution for murder, the Court set out Section 1689, Mississippi Code 1942 Annotated, which is identical with Section 13-1-5, emphasizing that part of said statute set out (Part 3) above, and said:
"It is apparent from this section that the defendant's wife could not testify against him without the consent of both unless the controversy was between them, which it was not. In fact, we have held that the mere offering of a wife to testify against her husband is reversible error." 254 Miss. at 947-948, 183 So.2d at 526.
In Grier v. State, 158 Ga. 321, 123 S.E. 210, 35 A.L.R. 1122 (1924), Grier was charged with the murder of his child and, in holding it was error for the wife to testify against her husband, where the Georgia statute provided that a wife is incompetent as a witness against her husband in a criminal prosecution except for offenses committed or attempted to have been committed upon her person, the Court said:
"[W]hile the wife ... would be a competent witness to testify to the offense of assault with intent to murder committed upon her person, if such be the truth of the case, she is not competent to testify to the offense of murder committed upon another, even though in the commission of that offense another and a different offense was committed upon her person. It must be remembered that the wife is not permitted to testify at all except as a matter of exception to the general rule; and the provision for her testifying, being an exception, cannot be liberally extended and must be strictly construed." 158 Ga. at 329, 123 S.E. at 214.
Graham v. State, 250 Miss. 816, 168 So.2d 496 (1964), cited by the majority, involving a conviction for incest, may be distinguished from the present case, for incest contributes to the delinquency of the minor child as surely as does smoking marijuana with her, and comes within the 1954 exception to the statute. Likewise, McRae v. State, 104 Miss. 861, 61 So. 977 (1913), involved a charge of vagrancy against the defendant, which crime constituted abandonment of the wife and child, was a crime *1374 against the wife, and she was competent to testify.
Statutes in derogation of the common law must be strictly construed, and the liberal interpretation of State v. Taylor, supra, enlarging "neglect" to mean "murder" abrogates that rule. If the enlargement in the Montana case and the majority opinion in this case following State v. Kollenborn, supra, can extend to a child of the parents, it can be extended to a stepchild, next to a foster child, then to a child over which custody is exercised, and then ad infinitum.
I think the statute should be amended by the Legislature, and, if the Legislature sees fit, the statute could be amended to extend the exception to all crimes committed by a parent against his or his wife's child. I do not think it should be amended by judicial construction, and I would reverse and remand the case.
PATTERSON and INZER, P. JJ., and SMITH, J., join in this dissent.
BROOM, J., took no part.