THE STATE v. JOE KOELZER, Appellant.—154 S. W. (2d) 84:

Division Two, September 25, 1941.

*Roy McKittrick,* Attorney General, and *Olliver W. Nolen,* Assistant Attorney General, for respondent.

■ WESTHUES, C.—Appellant was convicted in the Circuit Court of Cape Girardeau County, Missouri, of the crime of attempted murder by poisoning, in that he, on the fifth day of February, 1941, attempted to poison his wife, Beulah Koelzer. A jury, by its verdict, assessed appellant's punishment at imprisonment in the penitentiary for a term of five years. From the sentence imposed an appeal was taken.

■ Appellant has not favored us with a brief. We will consider the assignments of error preserved for our review in the motion for new trial. Appellant questioned the sufficiency of the evidence to sustain the verdict. The evidence was circumstantial and justifies the following statement of facts: Appellant, his wife and two children lived together in Cape Girardeau, Missouri. Appellant had been employed at a cement plant as a laborer for about fifteen years. About the latter part of January, 1941, the wife became ill and a doctor was called who prescribed a white medicine contained in gelatin capsules. This prescription was refilled a number of times. On February 4, Mrs. Koelzer became much worse. She developed severe pains in her abdomen, followed by vomiting, a burning sensation in her throat and stomach and an extreme thirst. Later Mrs. Koelzer's condition improved, but on February 9 her face and feet became swollen. She was taken to a hospital on February 14, where it was discovered that she had been poisoned by phosphorus. Appellant had given his wife one of the capsules on the evening of February 4, about one-half hour or so before she became violently ill. Mrs. Koelzer testified that this capsule had a greenish color; that her husband insisted that she take the capsule; that the next day he insisted that she take another at which time he had her open her mouth and he threw the capsule therein; that this capsule had been rolled in baking soda, appellant stating at the time that that would keep her from vomiting. About February 14, before the poisoning was discovered, appellant insisted on Mrs. Koelzer taking more of the capsules. She

refused, whereupon appellant threw the box containing them in the stove. Later that day the son, Joe Koelzer, Jr., discovered some rat poison on a pantry shelf and nearby a small block of wood in which two pins had been fastened with a half capsule hanging on each pin. There was also another capsule lying on a piece of paper nearby. A small can of white paint was there and the capsules on the pins had been painted white. The rat poison contained phos-phorus. The police were called and took charge of all these articles which were later used by the State as evidence against appellant. Appellant admitted having painted one of the capsules, but emphatically denied that he had placed the phosphorus poison in any of the capsules. Appellant offered evidence that Mrs. Koelzer had made statements indicating that she intended to commit suicide. The State introduced evidence by a medical expert that the burning sensation in the stomach and throat of Mrs. Koelzer and the thirst which followed the taking of the capsules on February 4, were strong symptoms of phosphorus poisoning. The State also introduced evidence of the existence of discord between appellant and his wife. We are of the opinion the evidence was sufficient to sustain a verdict of guilty. Appellant's insistence, immediately before his wife became violently ill, that she take a capsule, his insistence later that she take another which he had rolled in baking soda, his further insistence some days later that his wife take more of the capsules and his destruction of them when she refused all point to his guilt. Added to that is appellant's admission that he painted one of the capsules found on the pantry shelf. He admitted that he knew the rat poison was in the house; also that he purchased the paint, but explained his son was to use it to paint a pet turtle. The evidence meets the requirement of the law in circumstantial evidence cases, that the facts and circumstances proven must be consistent with each other and point to the guilt of the defendant and be inconsistent with every reasonable theory of his innocence. [See State v. Taylor, 190 S. W. 330, 1. c. 333 (5).]

 Appellant filed a motion to suppress evidence, being the exhibits found on the pantry shelf, on the theory that the officers obtained the exhibits under an unreasonable search and seizure. It must be noted that the officers were called to appellant's home; that the articles were pointed out to them and the wife of appellant gave the officers permission to take the articles. In such circumstances the trial court properly overruled the motion to suppress. It is evident that the officers did not in fact make a search of defendant's premises.

 Appellant also assigned error to the admission of the testimony of Dr. Magill with reference to finding phosphorus in a specimen of Mrs. Koelzer's urine and in the contents of a granite pan used by Mrs. Koelzer when vomiting. Appellant's contention is

that these exhibits were not properly identified. Reading the record, however, we find that all persons who had had possession of these exhibits testified and properly identified the exhibits.

■ Appellant objected to his wife testifying on the theory that she was not a competent witness against her husband. It is settled law that in cases of an assault or offense by the husband against the wife, or vice-versa, the injured party may testify against the other. [State v. Newberry, 43 Mo. 429. See 70 C. J. 162, sec. 200; Jones on Evidence (3 Ed.), sec. 734, and numerous cases there cited.]

■ Appellant also assigned as error a ruling of the trial court in refusing to admit evidence to the effect that he was preparing to move away from Cape Girardeau for the purpose of getting away from his mother-in-law and preserving family unity. We find from the record that the trial court on one occasion did sustain an objection to such evidence, but that later the evidence was admitted without objection, therefore the error, if in fact it were an error, was cured.

■ Error was assigned to the trial court's refusal to give instructions numbers 17, 19, 20 and 21 on behalf of the defendant. These were reasonable doubt instructions requiring the jury to find beyond a reasonable doubt certain elements of the crime charged, or to acquit defendant. The court gave seven instructions, at appellant's request, which required the jury to acquit the defendant unless they found him to be guilty beyond a reasonable doubt. It was not error therefore to refuse to give the other instructions covering the same question. Those given covered every element of the crime charged. Instructions 15A-1, refused by the court, concerned the question of motive. It was not error to refuse this instruction because the court, by Instruction 15A, which was given, informed the jury that a lack of motive was a circumstance in appellant's favor.

■ The information was in three counts, and by the instructions all of the counts were submitted to the jury. The instructions, however, limited a conviction on only one count. Appellant contended that the trial court should have compelled the State to elect. All of the counts were based on the same transaction and in reality only one offense was charged. The jury found appellant not guilty on counts one and three and guilty on count two. This procedure is authorized by the law. [See State v. Hargraves, 188 Mo. 337, 87 S. W. 491, l. c. 494 (1).]

We have examined the record proper and find no reversible error therein. The judgment is affirmed. ■ *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.