**STATE of Missouri, Respondent,**

v.

**Robert Herman GYNGARD, Appellant.**

**No. 47412.**

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1960.

Motion for Rehearing or to Transfer
to Court en Banc Denied
March 14, 1960.

74

Raymond A. Bruntrager, St. Louis, for appellant, Joseph G. Stewart, St. Louis, of counsel.

John M. Dalton, Atty. Gen., J. Richard Roberts, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Robert Gyngard was convicted of robbery in the first degree by means of a dangerous and deadly weapon and his punishment fixed at five years in the penitentiary. He does not contend that the state failed to make a submissible case but asserts that the trial court erred in its ruling as to the competency of a witness, in refusing to permit specified cross-examination, in admitting certain evidence and in rebuking defendant's counsel.

Defendant and Harry W. Burnett were jointly informed against but apparently a severance was granted and only Gyngard was on trial in the instant case. The charge against Burnett was still pending at the time of this trial.

About 7:40 in the morning of September 5, 1958, two men entered W. K. Eckert's grocery store and while pointing pistols at Eckert and his clerk took $150 to $160 from Eckert's person and $79 to $89 from his cash register. The man who took the cash register money was Harry Burnett, defendant's co-indictee, and he, at the time, had in his hand a brown paper bag. The two left in defendant's automobile. Burnett and defendant arrived at the residence of Burnett's wife about 8:15 a. m. Mr. and Mrs. Burnett were living apart; their divorce suit was pending and they were divorced four days later on September 9, 1958.

Mrs. Burnett testified over defendant's objection that while at her home either her husband or defendant was carrying a brown paper bag; that they (her husband and defendant) went in the bathroom purportedly to "clean up" and emerged five or ten minutes later unchanged in appearance and her husband then handed her a $20 bill; that her husband had a gun and that he and defendant left about 9:15 a. m.

Defendant worked at a warehouse where he had been employed for two days preceding September 5th. His hours were 8 a. m. to 4:30 p. m. He arrived at work on September 5th at 10 a. m. and was arrested at 10:35 a. m. by a police officer who found defendant's automobile, the same one which had been driven away from the place of the robbery, in an areaway leading to defendant's employer's premises. At the time of arrest defendant's billfold contained $104 made up of one 20, four 10's, three 5's and twenty-nine 1's.

Defendant contends that Mrs. Burnett's testimony should not have been admitted. Burnett was the co-indictee of defendant. The witness was not Burnett's wife at the time of defendant's trial but she testified to matters which transpired at a time when she was co-indictee Burnett's wife. Defendant was not identified by an eyewitness as having been a participant in the robbery so that Mrs. Burnett's testimony furnished a circumstance which with others provided a basis for defendant's conviction.

At common law a husband or wife was not permitted to testify for or against the other. "This disqualification was based upon: (a) the supposed public policy of promoting and preserving domestic harmony; (b) the strong 'repugnance' against seeing a person convicted by the testimony of one 'sharing the secrets of his domestic life and living under his roof' (Vol. 8, Wigmore on Evidence, 3d Ed., § 2227, p. 222, § 2228, pp. 224, 225); and, (c) because of the temptations to perjury (State v. Willis, 119 Mo. 485, 488, 24 S.W. 1008)." State v. Kollenborn, Mo., 304 S.W.2d 855, 859 [8]. Present section 546.260 RSMo 1949, V.A.M.S. was "enacted to relieve against certain fixed, common law disabilities; it was not enacted for the purpose of creating new disabilities." State v. Kollenborn, supra, 304 S.W.2d 861 [9, 10]. Section 546.260 is: "No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that

no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife."

In the present case neither husband nor wife testified against the other. Here the witness' husband was not on trial. The defendant on trial was the witness' husband's co-indictee and until a severance was granted was also her husband's codefendant. We confine our ruling herein to the fact situation wherein one spouse is offered as a witness against the other's co-indictee at a trial in which the other spouse is not on trial but at a time when the charge against said other spouse is still pending.

There is a conflict of authority on the foregoing proposition as is well demonstrated by this quotation from 97 C.J.S. Witnesses § 103, p. 512, and by an examination of the authorities there cited, particularly 70 C.J., p. 173, note 23: "Where two persons are jointly indicted or charged for or with the same offense, and neither has been acquitted or convicted, it has been held that, where one is separately tried, the spouse of the other is not a competent witness on such separate trial. The general rule, however, is that a husband or wife may testify at the trial of a person who is separately tried for an offense alleged to have been committed jointly by him and the wife or husband, even though, according to some authorities, the testimony may tend to implicate the other spouse, although other authorities deny the right to testify where the other spouse would be incriminated, and the spouse has been held incompetent where the offense charged required the joint act of the persons indicted in order for either to be guilty." See also Wharton's Criminal Evidence, 12th Ed., Vol. 3, Sec. 777, p. 113.

It appears that the exact proposition has not been ruled in this state although the courts in State v. Burnside, 37 Mo. 343, and State v. McCarron, 51 Mo. 27, impliedly ruled the question. In each of those cases (one a robbery case, the other a murder trial) the question was whether a co-indictee's wife was a competent witness *for* her husband's co-indictee at such co-indictee's separate trial. The court in the Burnside case said (37 Mo. 349, 350): "It has been uniformly held that the wife of one of several defendants, accused of a crime alleged to have been jointly committed, is an incompetent witness for any of his associates when all of them are on trial. Com. v. Manson, 2 Ashm., Pa., 31; Rex v. Frederick, 2 Stran. 1095; Regina v. Denslow, 2 Cox, C.C. 230; Com. v. Robinson, 1 Gray, Mass., 555; State v. Burlingham, 15 Me. 104. But it is established by a series of well considered decisions, and such seems to be the decided weight of authority, that where several are jointly indicted for an offence which may be committed by one or more, and they are tried separately, the wife of one defendant is a competent witness for the others; and on separate trials, they are entitled to the benefit of her testimony in all cases, except conspiracy or other joint offenses. Com. v. Manson, supra; Moffit v. State, 21 Tenn. 99; State v. Worthing, 31 Me. 62; State v. Anthony, 1 McCord, S.C., 285, 286; Regina v. Allen, 1 Crawf. & Dix, C. C. 104. Upon the principles and analogies of law which govern in the rules for the production and admissibility of testimony, we are of the opinion that the evidence should be received. Upon the separate trial of the codefendant, except in conspiracy and such like joint offenses, the judgment in the case of the prisoner will neither enure to the benefit or to the injury of the husband, and therefore the rule of law precluding the wife from testifying

either for or against her husband is not infringed."

The court in the McCarron case, supra, reiterated the last sentence of the foregoing quotation from the Burnside case.

█ It is apparent that if the reason assigned for the results in the Burnside and McCarron cases is valid, it is equally applicable to a fact situation like the instant one, wherein the co-indictee's wife's testimony is against her husband's co-indictee at such co-indictee's separate trial for robbery. We are of the opinion that the rule precluding one spouse from testifying against the other is not infringed by the fact alone that wife testifies against her husband's co-indictee at the separate trial of such co-indictee for an offense which does not require the joint act of those indicted for either to be guilty, at a time when the charge is still pending against her husband.

█ Defendant calls attention to the language in section 546.260 enabling a husband or wife to, "at the option of the defendant, testify in his behalf, or on behalf of a codefendant * * *." Defendant suggests that the foregoing language was inserted because the legislature recognized the rule (in some jurisdictions) stated in Wharton's Criminal Evidence, supra, Vol. 3, p. 113 that, "If the husband or wife is charged in conjunction with the other defendants, the testifying spouse will not be allowed to testify to evidence directly tending to incriminate the other, even though a severance has been granted and the trial of the spouse postponed, * * *" and thus, says defendant, the legislature intended to enable a wife to testify *for* a codefendant, and thereby impliedly prohibited her from testifying *against* a codefendant. We think that contention is unsound because the language defendant relies upon enabling a husband or wife to testify *for* the other's codefendant reasonably should be construed as applying to codefendants being jointly tried. That such is the proper construction is made more certain by the fact that the

opinions in both State v. Burnside (1866), and State v. McCarron (1872), supra, were in existence when the language in question was placed in the statute in 1879 (Sec. 1918 RSMo 1879) amending the law as originally enacted, Laws of Mo.1877, p. 356.

We have heretofore noted that the witness, Mrs. Burnett, was not the wife of defendant's co-indictee at the time she testified (November 1958) but was his wife when the matters about which she testified occurred (September 5, 1958). "It has been stated that her marital status at the time of trial should control. State v. Dunbar, 360 Mo. 788, 230 S.W.2d 845, 848. The contrary has also been asserted. State v. Kodat, 158 Mo. 125, 59 S.W. 73. There is a conflict on that subject generally. Vol. 3, Wharton's Criminal Evidence, 12th Ed., § 772, pp. 109, 110; 8 Wigmore on Evidence, 3d Ed., § 2237, pp. 247–250." State v. Kollenborn, supra, 304 S.W.2d 864. We do not reach that question here.

Defendant contends that the trial court erroneously refused to permit him to ascertain on cross-examination whether there was any agreement between the witness, Mrs. Burnett, and the prosecutor with respect to her former husband's punishment in exchange for her testimony at the instant trial. The state's attorney on redirect asked Mrs. Burnett whether her ex-husband had a scar on his face. (There was other testimony that one of the robbers had a facial scar.) Mrs. Burnett answered, "I thought I didn't have to answer any questions about him." The attorney said the case on trial was against Gyngard and asked her to answer the questions "in this case." She then answered that he did have a scar on his right cheek.

Defendant's attorney on recross asked, "Did you say you didn't think you would have to answer any questions about your husband today? * * * Have you made some kind of agreement with Mr. Kingsland?" (Mr. Kingsland was the assistant circuit attorney trying the case.) The record discloses that upon objection to that "whole line of questioning" there occurred

a series of colloquies, statements and rulings both in and out of the jury's presence. It will suffice to set forth the pertinent ultimate facts resulting from those episodes.

Defendant's attorney made it plain that he was attempting to show the interest, prejudice and bias of the witness and offered to prove by the witness that "she has an agreement not to testify against her husband, and * * * possibly there is some agreement about the punishment in her husband's case." It is also clear that the trial court told defendant's counsel that he was not entitled to make the proffered showing and sustained objections and refused the offer of proof. The fact remains, however, that during this series of events, this question was asked and this answer given: "Have you had some conversation with Mr. Kingsland about your husband's pending case or not? A. No." The trial court immediately thereafter sustained an objection to the question whether the witness had an "agreement in exchange for your testimony." Shortly thereafter and while the subject was still current, the prosecutor stated that he was "willing for her to answer that question," i. e., whether witness had any agreement with the prosecutor in exchange for her testimony. Defendant's counsel did not accept the offer which, as we interpret it, necessarily included an offer to withdraw the prior objection, but insisted that the state's attorney, having previously objected, could not then attempt to clarify the situation or to eliminate the error, if any, in the trial court's ruling. It seems apparent that defendant was interested in maintaining and perpetuating the record as it then existed and was not actually concerned whether the witness' answer to the question was heard by the jury.

■■ We agree with defendant that a witness' interest and bias are always relevant matters, State v. Pigques, Mo., 310 S.W.2d 942, 947 [7, 8], and if leniency had been promised Mrs. Burnett's ex-husband such would have been material as affecting this witness' credibility in testifying against her ex-husband's co-indictee. See State v. Bradley, 361 Mo. 267, 234 S.W.2d 556, 559 [7, 8]. While we are also of the opinion that it would have been proper and better for the trial court to have permitted the specific question, "you have no agreement in exchange for your testimony?" to have been answered, nevertheless, we rule defendant's contention adversely, first, because the question whether Mrs. Burnett had had any conversation about her husband's pending case with Mr. Kingsland (which question was answered negatively) in a sense and to a certain degree included the more specific question, the answer to which was prevented by the trial court, see State v. Potts, 239 Mo. 403, 144 S.W. 495, 498 [3, 4]; and for the further reason that defendant waived his right to here claim the asserted error by his action in effectively preventing the witness from giving the very answer he now claims was erroneously excluded.

■■ While defendant's counsel was cross-examining a witness the record shows this: "(Remarks at this time made by Mr. Bruntrager were not loud enough to be understood by the reporter.)" Whereupon the trial court told Mr. Bruntrager, defense counsel, not to address or converse with the jury while he was examining a witness. Out of the jury's presence counsel explained that he had discovered that he was blocking the view of two jurors and had said he was sorry if he was in their way and that he considered the trial court's admonition unfair and prejudicial to defendant and requested the court to direct the jury to disregard the court's remarks and also moved for a mistrial. Defendant now contends the trial court committed reversible error by rebuking him and thereby allegedly putting him in disrepute with the jury and, in turn, preventing defendant from having a fair trial.

We find nothing improper in the substance of the trial court's statement to counsel and the record does not disclose that the court's manner or other matter

made the proper statement prejudicial either to counsel or defendant. "The mere criticism of counsel is not ordinarily considered a ground for reversal. * * * The reprimanding of counsel during the progress of a trial is largely within the discretion of a trial court." State v. Thursby, Mo., 245 S.W.2d 859, 863 [8–10].

■ It will be recalled that the testimony showed that from $229 to $249 had been taken in the robbery, $150 to $160 in 20's, 10's, 5's and 1's from a billfold and $79 to $89 from a cash register. The evidence was that when defendant was arrested he had $104 in his billfold consisting of one 20, four 10's, three 5's and twenty-nine 1's. Later, another witness produced the envelope containing the $104 and the money was admitted in evidence over defendant's objection and the witness counted it and stated the denomination of the bills. Defendant contends the trial court erred in admitting the money on the grounds that it was not sufficiently connected with the money taken in the robbery and its admission over defendant's objection caused the jury to believe that the trial court thought there was evidence to show that the $104 was part of the holdup money.

We are of the opinion that the trial court correctly admitted the money and the facts with respect to it. The fact that $104 was found in defendant's possession so soon after the holdup was a circumstance which the jury might in this case properly consider along with other facts in evidence tending to connect defendant with the robbery. There was evidence from which the jury reasonably could have found or inferred that defendant and Burnett soon after the holdup divided some money while at Mrs. Burnett's and that defendant went from there directly to his work where he was arrested within 35 minutes after his arrival with bills in his billfold equal to approximately half of one estimate of the total money taken in the holdup.

■ A police officer testified that he arrested defendant's co-indictee, Harry Burnett, on September 7, 1958 (defendant was arrested on September 5). The question was then asked whether the officer had "previously put out any arrest order for Mr. Burnett." Defendant's only objection, that the question called for hearsay, was overruled and the witness answered that he had placed a teletype message on September 6 requesting Burnett's arrest. The question did not call for nor did the answer constitute hearsay, and consequently the trial court correctly ruled the only objection made.

■ Defendant contends in his brief that the evidence was not relevant or material, was necessarily based on hearsay, and was prejudicial because the jury may have believed, defendant says contrary to the fact, that he, the defendant, arrested the day before the order for Burnett's arrest, had made some statement implicating himself and Burnett or that the police had information which caused Burnett's arrest which the instant jury didn't have. We shall not pause to analyze or determine the merits of defendant's present contentions. It is apparent that neither defendant's objection to the specific question nor his objections to related questions which the record shows preceded it made clear to the trial court the matters defendant now urges with respect to the possible effect of the answer in question. Under the circumstances the trial court correctly ruled the only objection made.

We have examined those matters which we review irrespective of whether preserved for review or urged upon appeal and find no error in connection with them.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.