### STATE of Missouri, Respondent,

### v.

### John D. HAWTHORNE, Appellant.

### No. KCD 27034.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

---

Lloyd F. Dieckman, Kansas City, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Appellant, John D. Hawthorne, was charged by information with the crime of feloniously molesting his minor child in violation of Section 563.160 RSMo 1969, V.A.M.S. Upon trial the jury found him guilty and fixed his punishment at five years in the Missouri Department of Corrections. Judgment and sentence were entered accordingly, and he appeals.

Defendant raises issues concerning alleged error in permitting his wife to testify and a claim of error in permitting the prosecutor to ask leading questions of a very young sister of the victim. The judgment and conviction are affirmed.

The evidence presented at trial in the light of the jury verdict establishes factually that around noon on Saturday, December 30, 1972, defendant went to the home of his estranged wife and picked up his three minor daughters who were to spend Saturday afternoon and night with him. The four of them spent the afternoon and part of the evening visiting relatives but eventually went to defendant's apartment and spent the night. The three minor girls all slept in the same bed. One of the girls, K—, who was nine years old, testi-

fied that after all of the girls had gone to bed, the defendant came into the room, got in bed with her and disrobed her. She testified that defendant then laid down on top of her and touched her between her legs with his hands. Although simple and childish, her further testimony indicates clearly that defendant proceeded to have sexual intercourse with her.

Defendant returned the three girls to his wife's house the next morning. The wife, Helen Hawthorne, testified that she noted nothing unusual about the children at that time. She further testified that all day Sunday the children were under the strict supervision of their grandmother while she was at work. That evening she took her daughters to a New Year's Eve church service where they were never out of sight of the adults. When they returned home, K— came to her and told her that she was discharging. K— explained to her mother what had happened and was taken to Children's Mercy Hospital. A physical examination of K— at Children's Mercy Hospital revealed abrasions on the floor of the vaginal vault, hyperemia of the cervix, and the presence of a greyish exudate.

■ Defendant's first point on appeal contends that the trial court erred when it permitted the wife, Helen Hawthorne, to testify against her husband. He claims that the common law prohibition of one spouse testifying against the other is still law in Missouri and that the trial court erred when it overruled defendant's objection to her testifying. The point is without merit, for the Missouri Supreme Court long ago announced that "the wife, testifying voluntarily, is a competent witness against her husband in a prosecution for acts constituting a crime of personal violence against her child." State v. Kollenborn, 304 S.W. 2d 855, 864 (Mo. banc 1957). That a charge of molestation is a crime of personal violence against the child is apparent.

Defendant attempts to distinguish the Kollenborn case, claiming that, in Kollenborn, the wife was present when the crime was committed, could offer direct testimony thereto and was the only one who could testify concerning it. A reading of Kollenborn does not admit of such a limitation. The opinion does not recite that the wife directly witnessed the child's mistreatment, nor is it clear she was even in the same room. Rather, it appears that the wife's testimony was used to establish the fact that only she and her husband had access to the child when it was probably injured. The fact that defendant had opportunity to commit the crime was one of the facts sought to be established by the testimony of Helen Hawthorne in the instant case.

Any doubt concerning the Kollenborn case is laid to rest by the later case of State v. Greer, 313 S.W.2d 711 (Mo.1958). In Greer, the defendant was charged with the statutory rape of his minor daughter. The wife testified that on the day in question she had gone to a show, leaving the defendant with the children and that upon her return she found one of her daughters bleeding and took her to a hospital. The circumstances established by the wife's testimony in Greer were virtually the same circumstances sought to be established by the wife's testimony in the instant case, namely, the opportunity of the defendant to commit the crime and the fact of the child's bleeding. The Missouri Supreme Court, citing Kollenborn, held that the lower court did not err in permitting the wife to testify on behalf of the State.

There was no error in the instant case in permitting Helen Hawthorne to voluntarily testify against her husband standing trial for a crime of personal violence committed against her child. State v. Kollenborn, supra; State v. Greer, supra.

Defendant's second and final claim is that he was denied the right of confrontation because of the failure of witness M— to respond to the leading questions of the prosecutor. M— was K—'s eight-year-old sister and was present when the crime was committed. The State called her to the witness stand immediately after K— had testified.

She began by saying that although she did not remember the last time she was at her father's house, she did remember being there with her sisters around the first of the year. They had left home in the afternoon and had first gone to her aunt's house. However, they did not spend the night there, but spent the night at her father's house. She put on her pajamas and went to bed with her sisters. They all slept in the same bed. She testified that after going to bed that night, someone else got in bed with her. Later, she denied that anyone else had gotten into bed with her after she had retired. After this contradiction, there follow several pages of strained testimony which form the basis of defendant's complaint.

This portion of the child's testimony may be characterized in part. After the contradiction, the prosecutor did ask a leading question about the defendant getting into the sister's bed. On objection and request, the court struck the question and directed the jury to disregard. Then, under proper questioning, but after some repetition, the witness said that someone came into the room. Thereupon, the defendant in colloquy with the court and counsel out of the presence of the jury, objected to further questioning on the grounds that the witness either lacked the "ability" or the "willingness" to testify. The court pointed out the fact of the witness' obvious reluctance, but indicated he would permit the State to "pursue this just a little bit longer." The witness then responded to nonleading questions to indicate the defendant came into the bedroom that night but did not respond when queried concerning what then occurred. Those questions and answers were as follows:

Q (By McMcNearney) M—, what happened after your daddy came into the room that night?

A (No response.)

Q Did he come over to your bed?

A Yes.

Q What did he do?

A (No response.)

Q Can you remember what he did?

A (No response.)

Q Did he get into bed with you, M——?

MR. DIECKMAN: I will object to his leading the witness.

THE COURT: Sustained.

There followed a colloquy between court and counsel in which the court indicated he would not permit the prosecutor to go on leading the witness. The prosecutor thereupon dispensed with her testimony and defense counsel declined the proffered opportunity to cross-examine her.

Before trial, the court had examined this child witness to determine her competency to testify. At that pre-trial examination, she answered all but two questions of counsel and court, and apparently did so in a prompt manner. At that examination, she said she remembered what happened at her father's house around the first of the year and said she could truthfully testify to what occurred. The testimony of K— also placed M— at the scene of the crime. This pre-trial examination of M— and the trial testimony of K— fully warranted the prosecutor's belief that M— could testify about what had occurred.

 In this posture, neither the prosecutor nor the court could anticipate that M— would not respond to the questions asked. When this youthful witness proved timid and hesitating, it was discretionary with the court as to whether or not to permit the asking of leading questions, and this exercise of discretion does not constitute error unless the discretion is abused. State v. Coffman, 360 Mo. 782, 230 S.W.2d 761 (1950).

 This record reveals no such abuse of discretion. Examination of the record shows that some of the questions asked were objected to as leading and that some

of the objections were sustained. Further, some of the unobjected to questions received answers, and some did not. Defendant complains only of what he claims were leading questions, which were not answered. In this light, there were only two unobjected to questions which did not at one point or another receive answers. They were propounded immediately after M— had acknowledged that her father had come into her room that night and had come over to the bed and are set forth verbatim above.

The next question received a sustained objection, and there were no more questions asked. The defense counsel declined the opportunity to cross-examine. These questions were not in fact leading, for they do not suggest the answers, and there was no abuse of discretion in permitting them to be asked.

■ Defendant cites the cases of Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and State v. Gordon, 391 S.W.2d 346 (Mo.1965), in support of his claim that the failure of the witness to respond to these questions violated his right of confrontation. In both *Douglas* and *Gordon*, in the face of repeated invocations of the Fifth Amendment, the prosecutor continued to read a prior statement to the jury under the guise of interrogation. The United States Supreme Court in *Douglas,* and the Missouri Supreme Court in *Gordon,* held that the witness was unavailable for cross-examination by his invocation of the Fifth Amendment, and that the continued recitation of the prior statement to the jury could have been taken by the jury to be the equivalent of testimony. Since it was seen to be the equivalent of testimony, and since the witness was not available for cross-examination, the defendant's right of confrontation was violated. In the instant case, the mere failure to respond to two non-leading questions does not rise to the level of testimony by the prosecutor, as was the case in *Douglas* and *Gordon*, and

did not violate appellant's right to cross-examination.

The judgment is affirmed.

All concur.